# IN THE COURT OF APPEALS OF IOWA

No. 16-1857
Filed October 11, 2017

**MITCHELL COUNTY MUTUAL AGENCY, INC.,
d/b/a TOWN & COUNTRY INSURANCE AGENCY,**
  Plaintiff-Appellee/Cross-Appellant,

**vs.**

**SCOTT H. GINTHER,**
  Defendant-Appellant/Cross-Appellee.
_____

  Appeal from the Iowa District Court for Mitchell County, Colleen D.

Weiland, Judge.


  Scott Ginther appeals from the district court's ruling in this breach-of-

contract action. **AFFIRMED ON BOTH APPEALS.**



  Scott H. Ginther, Rockford, pro se appellant.

  Mark L. Walk of Walk & Murphy, P.L.C., Osage, for appellee.



  Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Scott Ginther appeals, and Mitchell County Mutual Agency cross-appeals, from the district court's ruling in this breach-of-contract action. Finding no error, we affirm on both appeals.

Mitchell County Mutual Agency, Inc., doing business as Town & Country Insurance Agency (T&C) is an insurance agency located in Osage, Mitchell County, Iowa. T&C merged with Harman Insurance in 2004.

Since 1999, the Harman Insurance agency provided property and liability insurance policies to Gary Ginther (father) and Scott Ginther (son). Gary and Scott farmed several parcels of farmland together and were the named insureds of several procured Howard County Mutual Insurance Association policies covering various real and personal properties. Harman Insurance agency and the Ginthers participated in a form of "agency billing." Harman Insurance paid to Howard County Mutual the Ginthers' various insurance premiums as they came due throughout the year. Once or twice a year, Gary would write a check to Harman Insurance for all amounts due and owing.

This billing practice continued after Harman Insurance merged with T&C in 2004. The records indicate that from 2007[1] through 2011, Gary paid about $6000 by May of each year and the balance of sums due—roughly $9000—in late December. In 2012 and 2013, Gary did not make an early payment. At the end of 2012, Scott and Gary met with Scott Wilde of T&C and paid the 2012 payments due. In 2013, Scott paid T&C. Although not paid by the Ginthers in 2014, T&C continued to pay the insurance premiums as they came due in 2014.

---

[1] T&C would retain seven years of records; no records were retained prior to 2007.

Gary died on July 23, 2014. His last will and testament was admitted without administration. Gary's property was transferred through the terms of the Gary Ginther Revocable Trust, which had been created on October 26, 2010. Notice of proof of will without administration was published ending August 14, 2014. Notice to creditors as to an irrevocable trust was published shortly thereafter.

A dispute arose with Scott Ginther about payment to T&C at the end of 2014. Scott Ginther met with Scott Wilde in December 2014. Ginther wrote a check for sums due on the insurance policies but then stopped payment on the check and cancelled the policies. Some refunds were issued to T&C on the cancelled policies that reduced the amount owed, but no additional payments have been made to T&C to reimburse the amounts paid on the policy premiums.

T&C filed this action against Scott Ginther, the Gary Ginther Irrevocable Trust, and the Gary Ginther Revocable Trust (together the Ginther defendants) for "account stated as an agreement" and an open account, asking for judgment in the amount of $12,204.67, plus interest—the amount paid by T&C for the 2014 insurance policies. The matter was tried as an alternative expedited civil action pursuant to Iowa Rule of Civil Procedure 1.281. The Ginther defendants filed no response to requests for admission, filed no exhibit list, and did not submitted proposed exhibits in a timely manner. T&C presented the testimony of Scott Wilde and exhibits. The Ginther defendants presented no evidence.[2]

---

[2] At trial, the Ginthers' attorney made a professional statement there was but one trust—the Gary Ginther Revocable Trust, which became irrevocable upon Gary's death.

On October 5, 2016, the court entered judgment in favor of T&C and against Scott Ginther, finding:

> Here, I find a contractual obligation for the coverage provided by Town & Country and the amounts billed for it. Gary affirmatively made the arrangements and knew the details. Scott was aware that Gary had arranged insurance coverage for their joint operation with Town & Country, and he benefited from it. Scott may not have known the details of it, but he did not object and he did not further inquire. He simply accepted the arrangement and the coverage. Because insurance is not free, Scott had reason to know that the coverage was provided with the expectation of compensation. *See* Restatement (Second) of Contracts § 69 cmt. a (1981), as cited in *Roger's Backhoe* [*Serv., Inc. v. Nicholes*], 681 N.W.2d [647,] 651 [(Iowa 2004)].

The court found no basis for finding the Ginther Trust liable. It also rejected T&C's right to payment under theories of quantum meruit and unjust enrichment because T&C had not pled those theories. The court awarded T&C attorney fees because of discovery and trial scheduling and discovery plan noncompliance.

Scott Ginther appeals, and T&C cross-appeals.[3]

A contract action tried to the court is reviewed for errors at law. *Rogers Backhoe*, 681 N.W.2d at 649. "Trial court findings of fact are binding on us if supported by substantial evidence, but we are not precluded from inquiry into whether erroneous rules of law materially affected the decision." *Id.*

Scott contends T&C's billing practice constituted a violation of the consumer credit code, and it is not binding upon him personally. He argues,

> [He] never knew what insurance coverage his father was purchasing for his farm, or what the payment arrangements were

---

[3] T&C's cross-appeal provides alternative grounds for recovery should this court find no express or implied contract existed. Because we affirm on the appeal, the cross-appeal is moot.

between decedent and Town & County. There was no farm partnership. He never accepted the insurance policy or the price charged. He never received a bill from Town and Country until after his father died. Scott never wrote a check out of his personal accounts or paid any consideration to Town and Country until after his father died and he inherited land. There was no open account or loan agreement which created a contractual obligation on the part of Scott to pay decedent's farm insurance.

The district court found otherwise, and substantial evidence supports the court's findings. We note specifically that Scott Wilde testified as follows:

> Q. Okay. So then at the—you advanced those throughout the course of the year for Scott and Gary. Then comes the end of the year and you meet with them and neither Scott or Gary would pay that bill. A. That's correct.
> Q. That's what you had done for [sixteen] years? A. [Sixteen] years.
> Q. Never an issue? A. Never.
> Q. And, in fact, we turn ahead a couple pages—it's about the 10th or 11th page—that's the check that Scott actually wrote to you paying that [2014] bill in full? A. That's correct.
> Q. And then he stopped payment on that? A. That's correct.
> . . . .
> Q. Now for [seventeen] years, you had insurance with Scott and Gary Ginther; correct? A. That's correct.
> Q. And they were listed on the policy as the insured—Scott and Gary Ginther. A. That's correct.
> Q. And the bills went to Scott and Gary Ginther. A. Yes.
> Q. Did Scott—and when you met with them in December, was Scott normally there? A. He wasn't there all the time, but he was probably there seven out of ten times is what I'm going to say.
> Q. And the last few years, my understanding is, Scott would actually write out the checks and then Gary would sign those. A. That's correct.
> Q. So Scott was aware what was going on? A. To my knowledge.
> Q. And he never, ever stated to you, wait a minute, this should only be in dad's name. A. Never.
> Q. And he never, ever stated to you, wait a minute, this should be in the trust name. A. No.
> Q. He led you to believe and, in fact, you did believe that Scott and Gary were in a joint venture. A. Yes, that's correct.
> Q. And Scott owned part of the property. A. Yes, that's correct.

Q. And Gary owned part of the property. A. Yes, that's correct.

Q. And they were just working it out between the two of them. A. Yes, that's correct.

We are not convinced that the failure to timely pay insurance premiums ripens into a loan agreement regulated by Iowa Code section 537.3207 (2014), as urged by Scott. We reach this conclusion even though there were delays in past payments between the parties.

Giving the deference due to the trial court's findings, we reject Scott's objections, and we affirm the court's conclusions.

**AFFIRMED ON BOTH APPEALS.**